IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DEBORAH HELM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 05-6326-HO |
| | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| COUNTRY COUCH, INC., an Oregon | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff, Deborah Helm, brings this action for sexual harassment and retaliation. Helm worked for defendant, Country Coach, Inc., from September 23, 2003, to March 28, 2005.

Plaintiff worked in Plant 2, station 5 at defendant's facility from October 2003 until May 24, 2004. During this time, plant manager Ed Slavkosky, area manager Joe Ellis, and station manager Pat Schopp supervised plaintiff. Plaintiff alleges that while

employed in Plant 2, Station 5, she was subjected to repeated and ongoing harassment from male coworkers. Following complaints, defendant transferred plaintiff to a different plant where she was supervised by two female supervisors. Plaintiff alleges she suffered retaliation ultimately resulting in her termination. Plaintiff alleges seven claims for relief: (1) gender based harassment in violation of Title VII; (2) retaliation in violation of Title VII; (3) gender based harassment and discrimination in violation of ORS § 659A.030; (4) retaliation in violation of ORS § 659A.030; (5) wrongful discharge; (6) intentional infliction of emotional distress; and (7) worker's compensation retaliation in violation of ORS § 659A.040. In addition to lost wages and other compensatory damages, plaintiff seeks punitive damages in the amount of $2,000,000.

Defendant moves for summary judgment on each of plaintiff's retaliation claims, plaintiff's claim for intentional infliction of emotional distress and each of plaintiff's punitive damages claims.

1.   Retaliation Claims

To make out a prima facie case of retaliation, plaintiff must establish "that she acted to protect her Title VII rights, that an adverse employment action was thereafter taken against her, and that a causal link exists between those two events." Steiner v.

<u>Showboat Operating Co.</u>, 25 F.3d 1459, 1465 (9th Cir. 1994).[1]  Once plaintiff has asserted a prima facie retaliation claim, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000).  If such a reason is articulated, plaintiff bears the ultimate burden of demonstrating that the proffered reason is a pretext for a discriminatory motive.  <u>Id</u>.

There is no dispute that plaintiff engaged in protected activity.  Defendant contends, however, that plaintiff suffered no adverse employment actions and that even if she did, the actions were not motivated by an intent to retaliate.

A.   Adverse Employment Action

"[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." <u>Id</u>. at 1243.  Plaintiff contends she suffered an ongoing course of hostility and intimidation by numerous employees and managers, that defendant was made aware of the conduct and did not take effective steps to prevent it, and that plaintiff's supervisor ultimately instructed her not to discuss the issue any further.  Plaintiff contends that she was transferred to

---

[1]Title VII law is instructive in interpreting ORS 659A.030 as well.  <u>Harris v. Pameco Corp.</u>, 170 Or. App. 164, 179. (2000) (considering action under ORS § 659.030 which was renumbered as ORS § 659A.030 in 2001).

another position shortly after making complaints in an effort not to fix the harassing environment, but rather to simply remove her from it.  Plaintiff further contends that when she persisted in her complaints, her supervisors removed several job duties from her and then terminated her.

Plaintiff does present evidence of unwanted conduct and that she complained about it.  It is unclear if plaintiff alleges that the transfer was retaliatory, but it appears that she did not feel that the transfer deterred her from engaging in protected activity. See Plaintiffs Response to Defendants Concise Statement of Facts (#36) at ¶ 9 (plaintiff agrees that she was initially pleased with her transfer to plant 10 and her new supervisors).  However, plaintiff does state that when she continued to report instances of intimidating behavior and harassing conduct to her new managers in plant 10, she was told that they did not want to hear additional reports and that the managers then reduced the skilled tasks she was to perform and replaced them with cleaning duties which she found demeaning and insulting.  See Affidavit of Deborah Helm (#38) at ¶ 7.  Such action could deter employees from engaging in protected activity.

Plaintiff also asserts that she was terminated based on her continued opposition to harassment and retaliation.

B.    Causal Link

Plaintiff argues that it was her persistence in making reports that caused defendant to remove job duties and terminate her. Defendant notes that plaintiff agrees that prior to a change in her job duties, there were some problems with her work, but plaintiff also maintained at the time that her supervisor exaggerated the problems.  See Helm Deposition (attached to #33) at pp. 226-27, 230-32.  There are issues of fact as to the intent to retaliate behind the decision to change plaintiff's job duties.  While plaintiff's good reviews occurring after initial complaints combined with plaintiff's acknowledgment of some problems with her work prior to the job changes could lead a trier of fact to conclude there was no retaliatory intent, plaintiff's testimony that she persisted in her complaints and that she was told to stop making complaints could provide the opposite conclusion.

Plaintiff also argues that she was terminated shortly after her poor evaluation also because of her persistent complaints. Again there is evidence of non-retaliatory motive and even evidence that  defendant did take steps to address the complaints, but plaintiff's testimony that harassing conduct continued and that she was told to stop complaining creates issues of fact as to intent. Accordingly, defendant's motion for summary judgment on the retaliation claims is denied.

To the extent defendant seeks summary judgment as to discrete acts such as whether actions of co-workers can be considered retaliation, the court declines to opine as to whether each alleged act standing alone constitutes retaliation. The court agrees that, for example, the transfer may not have been viewed by plaintiff as an adverse employment action, but it could be relevant even if the plaintiff did not subjectively view it as a deterrent from engaging in protected activity.

2.    Punitive Damages

Plaintiff may recover punitive damages against defendant if she demonstrates that the defendant engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C. § 1981a(b)(1). In Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 515 (9th Cir. 2000), the court stated:

> The standard for determining when evidence is sufficient to present the punitive damages issue to the jury is now governed by Kolstad v. American Dental Association, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). In that case, the Supreme Court rejected the District of Columbia Circuit's interpretation of Title VII, which would have required "egregious" conduct by an employer before punitive damages could be available. Id. at 2124. Instead, the Court stated that an employer may be liable for punitive damages in any case where it "discriminate[s] in the face of a perceived risk that its actions will violate federal law." Id. at 2125. The court made clear that although egregious conduct could be evidence of intent to break the law, such conduct was not

required to establish punitive damages liability. Id. at
2126 (holding that egregious behavior provides "one
means" of satisfying plaintiff's burden of proof for
punitive damages). Thus, in general, intentional
discrimination is enough to establish punitive damages
liability.

However, the Court also acknowledged that there could be
some instances in which intentional discrimination did
not give rise to punitive damages liability. The Court
set forth three areas in which the factfinder could find
intentional discrimination but the defendant would
nonetheless not be liable for punitive damages. First, if
the theory of discrimination advanced by the plaintiff
was sufficiently novel or poorly recognized, the employer
could reasonably believe that its action was legal even
though discriminatory. Second, the employer could believe
it had a valid BFOQ defense to its discriminatory
conduct. Third, in some (presumably rare) situations, the
employer could actually be unaware of Title VII's
prohibition against discrimination. Id. at 2125. Common
to all of these exceptions is that they occur when the
employer is aware of the specific discriminatory conduct
at issue, but nonetheless reasonably believes that
conduct is lawful. Under such circumstances, an employer
may not be liable for punitive damages.

The Kolstad Court also noted that in the punitive damages

context, an employer may not be vicariously liable for the

discriminatory employment decisions of managerial agents where

these decisions are contrary to the employer's good-faith efforts

to comply with Title VII.  Kolstad 527 U.S. at 545.  In addition,

an individual sufficiently senior in the corporation may be treated

as the corporation's proxy for purposes of liability.  Passantino,

212 F.3d at 516.

Defendant contends that the employees taking the allegedly

harassing actions against plaintiff were not sufficiently high-up

the corporate structure to make defendant liable.  However,

plaintiff presents evidence that she repeatedly informed supervisors of unlawful action and that defendant's Human Resources Vice President, Dan Bedore, was aware of the complaints. While defendant contends that Bedore did not have the required level of authority, his position as Human Resources Vice President is the type of position that would hold significant responsibility with respect to corporate policy regarding discriminatory employment practices.

Plaintiff presents evidence of harassing conduct following complaints, failure to adequately investigate, continued inappropriate conduct, failed efforts to discourage rude behavior, lack of appropriate discipline, and responses that include transferring the victims of the inappropriate conduct. In addition, plaintiff presents evidence of sexually inappropriate conduct by supervisors. There is evidence from which a trier of fact could find recklessness and, at a minimum, further evidence of the remedial action taken by defendants is necessary for a determination on the issue. While there is evidence that defendant had a policy prohibiting the complained of conduct, provided sexual harassment training and took corrective action, plaintiff's testimony regarding the investigation into her complaints creates issues of fact because she relates that she took the complaints to the Vice President of Human Resources and that the conduct

continued.  The motion for summary judgment is denied as to the punitive damages issue.[2]


3.   Intentional Infliction of Extreme Emotional Distress

To prevail on an intentional infliction of emotional distress (IIED) claim, plaintiff must demonstrate that (1) defendant intended to inflict severe emotional distress, (2) defendant's acts were the cause of plaintiff's severe emotional distress, and (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.  McGanty v. Staudenraus, 321 Or. 532, 543 (1995).

The intent element of IIED is satisfied not only where the actor desires to inflict severe emotional distress, but also where he knows that such distress is certain, or substantially certain to result from his conduct.  McGanty, 321 Or. at 550.

The Oregon Supreme Court has noted that the duty to refrain from abusive behavior in the employment relationship comes close to that of the physician toward a patient.  Hall v. The May Department Stores Co., 292 Or. 131, 138 (1981).  Thus, the employment relationship may impose a more demanding obligation to refrain from inflicting mental and emotional distress.  See id.  The

_____

[2]To the extent plaintiff seeks punitive damages with respect to her state law claims, the motion is granted.  Punitive damages were not cognizable under the previous ORS § 659.030, Forsberg v. Pacific Northwest Bell Telephone Co., 623 F.Supp. 117 (D.Or. 1985), and that has not changed with the renumbering of the statute.

consideration of the relationship between the alleged tortfeasor and the alleged victim is relevant to the inquiry regarding the conduct element. <u>See</u> <u>Rockhill v. Pollard</u>, 259 Or. 54, 63 (1971).

It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. If the minds of reasonable people would not differ on the subject, the court is obliged to grant summary judgment. <u>Pakos v. Clark</u>, 253 Or. 113, 132 (1969).

Various factors bear upon the offensiveness of the conduct, including whether a special relationship exists between the defendant and the plaintiff, such as that of physician-patient, counselor-client, or common carrier-passenger. <u>Williams v. Tri-County Metropolitan Transportation District of Oregon</u>, 153 Or.App. 686, 689-90 (1998); <u>Erickson v. Christenson</u>, 99 Or.App. 104, 107, rev dismissed 311 Or. 266 (1991). Other factors include whether the conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual. <u>See</u> <u>Checkley v. Boyd</u>, 170 Or.App. 721 (2000). The setting in which the allegedly outrageous conduct occurs--for example, in a public venue or within the employment context--also can bear on the degree of offensiveness of the conduct. <u>See, e.g.,</u> <u>Hall</u>, 292 Or. at 137; <u>Trout v. Umatilla Co. School Dist.</u>, 77 Or.App. 95, 102 (1985).

"Oregon cases which have allowed claims for intentional infliction of emotional distress to proceed typically involve acts of psychological and physical intimidation, racism, or sexual harassment." Garrison v. Alaska Airlines, Inc., Civil No. 98-433-KI, Opinion by Judge King dated June 17, 1999, p. 8.

The mere fact that an employer overworks employees, makes unreasonable demands upon them, and is otherwise less than a model employer does not by itself constitute an extraordinary transgression of the bounds of socially tolerable conduct under Oregon law. Cf Madani v. Kendall Ford Co., 312 Or 198, 203-06 (1991) (terminating employee for refusing to pull down his pants); Patton v. J.C. Penney Co., 301 Or 117, 124 (1986) (employee terminated because he refused to stop dating co-worker); Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or.App. 234, 237 (1992) (employer threw a tantrum, screamed and yelled at his employees, accused them of being liars and saboteurs, then fired them all); Snyder v. Sunshine Dairy, 87 Or.App. 215, 218 (1987) (inconsistent and excessive supervision, unjustified reprimands, threats of termination, requiring the employee to perform menial tasks). See also Wells v. Thomas, 569 F.SUPP. 426, 433 (EDPa 1983) (placing plaintiff in newly created position without responsibilities, taking away her private office, reassigning her secretary, allowing her phone calls to go unanswered, giving her poor performance evaluations for the first time in 25 years, and terminating her);

Beidler v. W.R. Grace, Inc., 461 F.SUPP. 1013 (EDPa 1978), aff'd 609 F.2d 500 (3rd Cir. 1979) (plaintiff excluded from meetings necessary to perform his job, found papers constantly rearranged on his desk to annoy him, informed he would be given a new assistant without consultation, learned from rumors that his job was in jeopardy, and evaded by his superior who intimated that the new assistant would be replacing him).

Plaintiffs allegations in this case do not amount to an extraordinary transgression of the bounds of socially tolerable conduct under Oregon law.  Plaintiff demonstrates that she was exposed to crude language and sexual comments, saw a clay penis, saw a replica of a tampon, was told to stop complaining about the rude behavior, was subjected to insincere statements,  received a poor performance evaluation, and was fired.  Plaintiff also shows that a co-worker called her a "dyke" and made a threat, but that employee was fired after plaintiff complained.  Defendant's motion for summary judgment is granted as to plaintiff's intentional infliction of emotional distress claim.


CONCLUSION

For the reasons stated above, defendant's motion for partial summary judgment (#30) is granted in part and denied in part.

DATED this  7th  day of June, 2007.

                                     s/ Michael R. Hogan
                               United States District Judge